UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE WHARAM, | |
| Plaintiff, | Civ. No. 15-2744 (KM) |
| -v- | |
| WASHINGTON UNIVERSITY et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This matter comes before the Court on the motion of Defendants to dismiss this matter for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). D.E. 11. Plaintiff opposes the motion. D.E. 12. The District Court referred this matter to the Undersigned for a Report and Recommendation. The Undersigned has considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Undersigned respectfully recommends that the District Court grant the motion and dismiss this action.[1]

**Background**

This is a medical malpractice case. At all relevant times, Plaintiff George Wharam, a New Jersey resident, was a student at Washington University in St. Louis, Missouri. See Compl., at 1 & ¶ 12, Mar. 9, 2015, D.E. 1. Plaintiff alleges that on April 13, 2012, he went to Washington University's Habif Health & Wellness Center (the "Health Center") for "advice regarding necessary vaccinations and/or medications" in advance of a scheduled trip to Peru. See

---

[1] Neither party has sought to transfer this action as an alternative to dismissal under Fed. R. Civ. P. 12(b)(2).

id. at ¶¶ 5, 12.  Dr. Lisa Ross, a physician employed by the Health Center, prescribed Plaintiff Mefloquine, an anti-malaria medication.  See id. at ¶¶ 14, 17; see also Declaration of Lisa Ross, M.D., attached as Ex. B to Motion to Dismiss, D.E. 11-1 ("Ross Decl."), at ¶ 3.  Plaintiff alleges that a side of effect of the medication is, among other things, severe depression.  Compl., D.E. 1, at ¶ 19.  Plaintiff further alleges that Dr. Ross did not inform him of the side effects, or that there were other equally effective alternatives.  See id. at ¶¶ 18, 21.

Plaintiff asserts that upon his return from Peru, in late summer or fall of 2012, he began experiencing severe depression and "suicidal ideations."  See id. at ¶ 27.  He sought treatment at the Health Center in October 2012, where he was treated by Dr. Karen Boesch and Michele Marcus, FNP.  See id. at ¶¶ 27, 32.  Dr. Boesch was a physician employed by the Health Center, and Ms. Marcus was a Family Nurse Practitioner employed by the Health Center.  Declaration of Karen Boesch, M.D., attached as Ex. C to Motion to Dismiss, D.E. 11-1 ("Boesch Decl."), at ¶ 3; Declaration of Michele Marcus, F.P.N., attached as Ex. D to Motion to Dismiss, D.E. 11-1, at ¶ 3.

Plaintiff contends that Dr. Boesch failed to review Dr. Ross's chart for Plaintiff, or to consult with Dr. Ross, and otherwise failed to determine that Mefloquine might have caused Plaintiff's condition.  Compl., D.E. 1, at ¶¶ 29-30.  Plaintiff further alleges that during an examination of Plaintiff on December 5, 2012, Nurse Marcus similarly failed to review Dr. Ross's chart for Plaintiff, or to consult with Dr. Ross, and otherwise failed to determine that Mefloquine might have caused Plaintiff's condition.  Compl., D.E. 1, at ¶¶ 33-34.

Plaintiff alleges that to prevent himself from committing suicide, he took a leave of absence from Washington University to return to New Jersey to his family's care.  Compl., D.E.

1, at ¶ 35.  Plaintiff alleges that while he was back in New Jersey, he received treatment from a psychiatrist in Princeton, New Jersey, who ultimately determined that Plaintiff's depression and suicidal ideations were linked to the anti-malaria medication.  See id. at ¶ 37.

On March 9, 2015, Plaintiff filed the instant action against Washington University in St. Louis, the Health Center, Dr. Ross, Dr. Boesch and Nurse Marcus.  The Complaint brings claims for medical malpractice and infliction of emotional distress against Washington University, the Health Center, Dr. Ross, Dr. Boesch, and Nurse Marcus, as well as for negligent hiring against Washington University and the Health Center.  Plaintiff initially filed the action in New Jersey state court, and Defendants removed it to this Court on or about April 17, 2015.

Defendants now seek to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  The central issue is whether this Court has specific personal jurisdiction over the Defendants.[2]  Defendants argue that Plaintiff's claims have no connection to New Jersey because the treatment that is the subject of Plaintiff's Complaint occurred entirely in Missouri, by Missouri residents, while Plaintiff was attending school in Missouri.  See Br. in Support of Motion to Dismiss, May 8, 2015, D.E. 11-3, at 10-13.

Plaintiff contends that Defendants are subject to specific personal jurisdiction for three reasons.  First, Plaintiff argues that Washington University actively solicited out-of-state students

---

[2] Plaintiff concedes that this Court does not have general personal jurisdiction over the Defendants.  Pltf.'s Opp'n Br., D.E. 12, at 3 ("Plaintiff does not claim that Defendants are subject to general personal jurisdiction in New Jersey; thus, Plaintiff will not address this point.").  The Court's own review of the record persuades it that there is no general jurisdiction.  There is no evidence that Washington University or the Health Center has any office or medical practice in New Jersey.  Also, it does not appear that Dr. Ross, Dr. Boesch, or Nurse Marcus has ever lived or practiced in New Jersey.  Ross Decl., D.E. 11-1, at ¶¶ 4-9; Boesch Decl., D.E. 11-1, at ¶¶ 4-9; Marcus Decl., D.E. 11-1, at ¶¶ 4-9.  Accordingly, the Court's analysis is limited to whether it has specific personal jurisdiction over these Defendants.

to seek treatment with the Health Center before consulting an off-campus physician, when the University knew those students would return to their home states. Pltf.'s Opp'n Br., D.E. 12, at 5. Plaintiff argues that such solicitation is thus directed at the home states of the University's students, thereby conferring specific jurisdiction. See id. at 5-6.

Second, Plaintiff argues that Defendant Dr. Ross knew that Plaintiff would be returning to New Jersey, would fill his anti-malarial prescription in New Jersey, and ingest the medication in New Jersey. See id. 6-8. Plaintiff argues that Dr. Ross therefore sufficiently directed her activities at Plaintiff in New Jersey to confer specific jurisdiction. See id. at 8.

Finally, Plaintiff contends that Dr. Boesch was actively involved in Plaintiff's treatment in New Jersey. See id. at 9-10. Plaintiff alleges that Dr. Boesch communicated with Plaintiff's mother, who was in New Jersey, provided Plaintiff's mother with business cards to share with New Jersey physicians who were treating Plaintiff, and spoke with Plaintiff's New Jersey psychiatrist. See id. at 9. Accordingly, Plaintiff argues, Dr. Boesch had significant contacts with New Jersey that give rise to the claims in this case.

**Analysis**

Specific personal jurisdiction exists when the relationship among the defendant, the cause of action, and the forum are such that a defendant should reasonably anticipate being haled into court there. Machulsky v. Hall, 210 F. Supp. 2d 531, 539 (D.N.J. 2002) (citations omitted). The Court of Appeals for the Third Circuit has instructed:

> Determining whether specific jurisdiction exists involves a three-part inquiry. First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice. Because this

> analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis.

Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (internal quotations marks and citations omitted).  To determine whether specific personal jurisdiction exists, the Court must examine the "quality and nature of the defendant's activity."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  That examination includes consideration of whether and which actions were directed at the forum, and whether the particular claim arose from that activity.  Marten, 499 F.3d at 296.  In conducting this examination, the Court must be mindful of the type of cause of action alleged.  Here, Plaintiff alleges that the Defendants committed medical malpractice in treating him with Mefloquine, that in so doing Defendants caused Plaintiff to suffer emotional distress, and that the University and Health Center were negligent in hiring Dr. Ross, Dr. Boesch, and Nurse Marcus.

To find a defendant has minimum contacts with a forum state requires a determination that "the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protection of its laws." Hanson, 357 U.S. at 253.  There is sufficient due process contact for specific personal jurisdiction if the defendant, for example, has purposefully directed its activities at residents of the forum.  Henry Heide, Inc. v. WRH Products. Co., 766 F.2d 105, 108 (3d Cir. 1985).  But attenuated contacts such as "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state." Osteotech v. Gensci Regeneration Sciences, Inc., 6 F. Supp. 2d 52, 56 (D.N.J.1998) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).  Similarly, that a defendant directed a telephone communication or mail into a forum state does not trigger personal jurisdiction

unless those actions "show purposeful availment." Mellon Bank, 983 F.2d at 556; Barrett v. The Catacombs Press, 44 F. Supp. 2d 717 (E.D.Pa. 1999).

In this case, the Court cannot find a purposeful connection between the Defendants and the State of New Jersey. The core of Plaintiff's claims arise from the alleged negligent medical care and instructions he received from Defendants.[3] A review of the record, however, demonstrates that Defendants issued, and Plaintiff received, the medical care and instructions in Missouri. Accordingly, all significant contacts between Plaintiff and Defendants giving rise to this litigation occurred in Missouri, and Defendants' contacts with New Jersey are, at most, minimal and incidental. Certainly, the record does not suggest that Defendants adequately directed their contacts to New Jersey such that they could reasonably foresee being haled into court in this forum.

Plaintiff first received treatment on April 13, 2012, when he went to the Health Center before the Peru trip. Compl., D.E. 1, at ¶¶ 5, 12. There, Dr. Ross prescribed Mefloquine as a treatment for anti-malaria. See id. at ¶¶ 14, 17; see also Ross Decl., at ¶ 3. A core component of Plaintiff's negligence claims is when Dr. Ross prescribed that medication, she did not inform Plaintiff of Mefloquine's side effects or alternatives, and did not instruct Plaintiff to discontinue use of Mefloquine if he experienced psychological side-effects. See id. at ¶¶ 18, 19, 21, 26. Clearly, the treatment and issuance of the prescription occurred in Missouri.

Plaintiff next consulted with Defendants in October 2012, after he had returned from Peru

---

[3] As noted earlier, Plaintiff also asserts a negligent-hiring claim that alleges that the University and Health Center negligently and carelessly hired and supervised the individual Defendants. Complaint, D.E. 1, at ¶¶ 48-49. But Plaintiff makes no assertion, in the Complaint or in his opposition to the motion to dismiss, that any aspect of the hiring or supervision occurred in New Jersey.

and was suffering from severe depression and "suicidal ideations." See id. at ¶ 27.  Plaintiff received treatment from Dr. Boesch at the Health Center.  See id. at ¶¶ 27, 32.  Dr. Boesch also instructed Plaintiff to return to the Health Center for a physical examination.  Id. at ¶ 31.  Central to Plaintiff's malpractice claim is that Dr. Boesch failed, among other things, to: (1) review Dr. Ross's chart; (2) investigate Plaintiff's medical history and discover his use of Mefloquine; and (3) consult with Dr. Ross.  Id. at ¶¶ 29-30.  Therefore, this event, and the alleged malpractice, also occurred in Missouri.

Plaintiff's next contact with Defendants relevant to his claims also occurred at the Health Center.  On or about December 5, 2012, Plaintiff returned as directed by Dr. Boesch for a physical examination.  Id.  Nurse Marcus examined the Plaintiff.  Id. at ¶ 32.  However, Plaintiff alleges, Nurse Marcus failed to review Dr. Ross's chart, or to consult with Dr. Ross about Plaintiff's condition, or to examine Plaintiff's history to determine that he had taken Mefloquine.  Id. at ¶¶ 33-34.  As a result of the alleged negligence, Plaintiff continued to experience depression and suicidal ideations, and took a leave of absence from college in order to get medical help.  Id. at ¶¶ 35-37.  Like the prior instances wherein Plaintiff alleges Defendants committed malpractice, this contact occurred in Missouri.

Notwithstanding that each of the foregoing instances occurred in Missouri, Plaintiff argues that Defendants had sufficient contacts with New Jersey regarding Plaintiff's care to sustain the exercise of specific personal jurisdiction in New Jersey.  Plaintiff contends that Defendants encouraged students, while in and around St. Louis, to seek treatment first at the Health Center before seeing an off-campus medical provider.  Pltf's Opp'n Br., D.E. 12, at 5 & Exh. A (2015 Parent's Guide for The Habif Health and Wellness Center).  Plaintiff reasons that

this statement, made on the University's website and in a parent's guide, proves Defendants were aware that students were only temporarily in Missouri, and would travel home for break and at the end of the school year. Id. Plaintiff further reasons this statement constitutes an active solicitation to students to seek medical care at the Health Center. Id.

This argument is problematic for several reasons. First, it lacks legal support. Indeed, Plaintiff fails to cite any caselaw subjecting an out-of-state provider to specific jurisdiction based on that provider's treatment of a forum resident. Instead, Plaintiff tries to draw a supportive inference by distinguishing cases cited by Defendants. For example, Plaintiff attempts to invoke Gelineau v. New York Univ. Hospital, 375 F. Supp. 661 (D.N.J. 1974). See Pltf's Opp'n Br., D.E. 12, at 5. But Gelineau does not support Plaintiff's argument. The court in Gelineau held only that there was no specific jurisdiction over a New York hospital that had issued blood transfusions to a New Jersey resident, where there was no showing that the hospital solicited patients in New Jersey. Gelineau, 375 F. Supp. at 667-69. In fact, this district has consistently held a non-resident medical provider's treatment of a New Jersey resident is insufficient to support specific jurisdiction. See Grier ex rel. Grier v. Univ. of Pennsylvania Health Sys., Civ. No. 07-2475, 2007 WL 2900394, *3 (D.N.J. Oct. 1, 2007) (finding no specific jurisdiction over Pennsylvania medical provider for alleged malpractice occurring in Pennsylvania); Brownstein v. New York Univ. Medical Ctr., Civ. No. 94-907, 1994 WL 669620, *5 (D.N.J. Nov. 22, 1994) (finding no personal jurisdiction where New Jersey residents alleged that artificial-insemination treatments administered in New York caused Plaintiff to have twins with birth defects, and stating that "[t]he courts generally hold that doctors who treat patients who have travelled from another state to receive care are not subject to jurisdiction in a malpractice action in the patient's

home state after they return there. . . . The rule is based on the personal character of medical services that, by their nature, are directed at the person who needs treatment, not at any particular forum.") (internal citations omitted). See also Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, 317-19 (D.N.J. 1997) (reiterating ruling on reconsideration that no specific jurisdiction existed in New Jersey over Pennsylvania physician alleged to have provided negligent medical advice over the phone to New Jersey resident); Bovino v. Brumbaugh, 221 N.J. Super. 432, 437 (App. Div. 1987) (finding no personal jurisdiction in New Jersey over Pennsylvania physician who treated New Jersey resident in Pennsylvania, and reasoning that post-surgery telephone conversations between physician and patient "were nothing more than follow-ups to his consult evaluation and did not constitute such contacts with New Jersey as would cause him to reasonably anticipate being haled into court here to answer claims of malpractice asserted by plaintiff.").

     Second, it is factually inaccurate.  Plaintiff is correct that on its website and in the Parents Guide, the University and Health Center instruct students first to consult with a Health Center physician for a medical issue.  But further review of the Parents Guide makes clear that this provision is not a solicitation for business.  Instead, it reflects the University's requirement that students who have health insurance through the University must first get a referral from the Health Center to receive treatment from an outside St. Louis medical provider.  See Pltf's Opp'n Br., D.E. 12, Exh. A, at 22.  In short, it is a requirement of the insurance plan, not unlike the referral requirement of many health insurers, and not solicitation for business.

     Plaintiff's other arguments essentially consist of various ways that Defendants supposedly reached into New Jersey during the course of Plaintiff's care.  For example, Plaintiff asserts that

when Dr. Ross prescribed the Mefloquine, she knew or should have known that Plaintiff would ingest the medication in New Jersey, and possibly even have the prescription filled in New Jersey. Id. at 6. Indeed, Plaintiff contends, the Health Center's traveling immunization services focused on students whom Defendants knew would travel outside of Missouri. Pltf's Opp'n Br., D.E. 12, at 6.

But Plaintiff's argument ignores courts' long-held recognition that medical services are inherently geared toward the patient, not the patient's subsequent destination. Brownstein, 1994 WL 669620, at *5; Gelineau, 375 F. Supp. at 667 ("When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment . . . ."). Otherwise, the Defendants could be subject to jurisdiction anywhere in the United States, despite never having practiced medicine anywhere except the University Health Center in Missouri. As the courts noted in Grier and Gelineau, that result would hardly comport with "traditional notions of fair play and substantial justice." Accordingly, whether Defendants knew or should have known that Plaintiff intended to travel to New Jersey or elsewhere outside of Missouri after getting the Mefloquine prescription from Dr. Ross is not a significant factor in the Court's jurisdictional analysis.

Plaintiff also asserts that Dr. Ross communicated with Plaintiff's mother and New Jersey

physicians in or around late 2012, and thereby reached into New Jersey to render the care underlying Plaintiff's malpractice claims. Pltf's Opp'n Br., D.E. 12, at 9-11. This argument is problematic for two reasons. First, any such communications were purely derivative of the contacts in Missouri. In other words, those communications occurred as a result of Plaintiff's reaction to the Mefloquine that Dr. Ross had prescribed for Plaintiff in Missouri, based on her examination of him in Missouri, and following Plaintiff's consultations with Dr. Boesch and Nurse Marcus in Missouri, and their alleged negligence in failing to determine that Mefloquine might have caused Plaintiff's condition.

Second, Plaintiff's proposition that such contacts are sufficient to confer specific jurisdiction finds scant support in the law. Plaintiff relies principally on Mesalic v. Fiberfloat Corp., 897 F.2d 696 (3d Cir. 1990). In that case, the Third Circuit reversed the district court's determination that New Jersey lacked specific jurisdiction over a boat manufacturer, where the manufacturer had delivered the boat to Plaintiff in New Jersey and attempted to fix the boat in New Jersey. According to Plaintiff, Mesalic establishes that communications directed into New Jersey are sufficient to confer specific jurisdiction. Pltf's Opp'n Br., D.E. 12, at 11. However, the Third Circuit emphasized that the defendant manufacturer had numerous contacts with New Jersey, of which the communications directed at New Jersey were only a part. Mesalic, 897 F.2d at 700. Those contacts also included "delivery of the vessel by a Fiberfloat employee to the appellant in New Jersey and this same employee's attempt to repair the boat in New Jersey and . . . work performed by another Fiberfloat mechanic in New Jersey from May 7 through May 27, 1988." Id. Those contacts, which included two trips, one for twenty days, by Defendant's staff

specifically far surpass the Defendants' contacts with New Jersey in this case.[4]

Plaintiff also relies on Wolpert v. North Shore Univ. Hosp., 231 N.J. Super. 378 (App. Div. 1989). In Wolpert, the defendants were physicians and social workers who had issued reports to the New Jersey Superior Court regarding whether the plaintiffs had abused their grandson, as part of litigation over the grandparents' visitation rights. Id. at 380. Plaintiffs sued the defendants for negligence and intentional misconduct. The Appellate Division held although the defendants had prepared the reports in New York, New Jersey could exercise specific jurisdiction. The Appellate Division reasoned that the defendants directed their actions to the legal proceeding in New Jersey, and knew that their reports would impact those proceedings. Id. ("If someone negligently discharges a firearm from across the State line, intentionally directing the bullet into New Jersey, we have little doubt that such an act satisfies the dictates of International Shoe Co. v. Washington . . . entitling us to exercise jurisdiction over the actor.").

The circumstances in Wolpert are plainly different than those here. The Wolpert defendants were not treating providers who primarily rendered their services in another jurisdiction and only partially, if at all, in the forum state. Instead, it appears that the entirety of those defendants' actions at issue—i.e., issuing reports to the New Jersey state court for use in court proceedings–was directed squarely at New Jersey. To apply Wolpert here would ignore Gelineau, Grier, Brownstein, and an extensive body of caselaw recognizing that personal services

---

[4] In fact, Mesalic also tried to predicate specific jurisdiction on other contacts that more closely resemble those at issue here. That argument did not especially resonate with the Third Circuit. See Mesalic, 897 F.2d at 700 n. 10 ("Mesalic also argues that Fiberfloat's marketing strategies in New Jersey (i.e. advertisements in a national magazine and attendance at a regional boat show) and its knowledge that its product would be sold in New Jersey are additional contacts upon which to base jurisdiction. The marketing strategy provides, at best, tangential support for the assertion of personal jurisdiction.").

such as medical treatment are directed at the person, not a location, and would do so based on an entirely different set of facts.

In sum, the medical examination of Plaintiff that lead to the Mefloquine prescription, the actual issuance of the Mefloquine prescription, and the subsequent visits during which Health Center professional allegedly failed to diagnose that Plaintiff had had a negative reaction to Mefloquine, all occurred in Missouri. To the extent the Defendants had any contact with New Jersey, it was at most incidental to the alleged malpractice. Accordingly, the Court cannot conclude that Defendants directed their activities toward New Jersey such that they could reasonably anticipate being haled into court here, or that the exercise of specific jurisdiction would not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 320 (1945); see also Marten, 499 F.3d at 296 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). For those reasons, the Undersigned concludes that the Court cannot exercise specific jurisdiction over Defendants.

**Conclusion**

For the reasons set forth above, the Undersigned respectfully recommends that the District Court grant Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

The parties are reminded that under 28 U.S.C. § 636 and Local Civil Rule 71.1(c)(2), they have fourteen days to file and serve objections to this Report and Recommendation.

Michael A. Hammer<br>
**UNITED STATES MAGISTRATE JUDGE**

Date:   October 9, 2015